**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

P.A., et al.,

                Plaintiffs,

v.                                CIVIL ACTION NO.  2:19-cv-00705

FAYETTE COUNTY BOARD OF EDUCATION, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

      Pending before the Court is Defendants Fayette County Board of Education and Donna Evans' Motion to Dismiss. (ECF No. 11.)  For the reasons set forth below, Defendants' Motion is **DENIED** in part, and **GRANTED** in part.

*I.    BACKGROUND*

      This action arises out of alleged injuries sustained by a developmentally disabled minor at a Pre-K school program on September 11, 2018 in Fayette County, West Virginia.  (ECF No. 1.) This action was brought on behalf of P.A., by and through his parent and next friend, H.K., and by H.K. individually.[1]  (*Id.*)  Plaintiffs filed this action against the Fayette County Board of Education ("FCBOE") and Donna Evans ("Evans") (collectively, "Defendants"), an occupational therapist, on September 27, 2019.  (*Id.*)

---

[1] In order to protect the privacy of Plaintiff P.A., initials shall be used to identify both P.A. and Plaintiff H.K. Collectively, the Court shall reference them as "Plaintiffs."  Plaintiffs assert that Defendants have actual knowledge of the identities of Plaintiffs H.K. and P.A.  (ECF No. 1 at 1, n.1.)

The following alleged facts are taken from the Plaintiffs' Complaint.  At the time of the events giving rise to this action, P.A. was a four-year-old minor with developmental disabilities, including a diagnosis of Autism Spectrum Disorder.  (*Id.* at ¶¶ 11–12.)  P.A. is nonverbal and has deficits in pre-writing, fine motor, self-care, and sensory modulation skills, and he requires assistance with self-care activities, including hygiene and eating.  (*Id.* at ¶¶ 12–13.)

P.A. was enrolled as a special needs student at Gatewood Elementary School in the Pre-K school program at the beginning of the 2018–19 school year.  (*Id.* at ¶ 16.)  Because of his disabilities, P.A. required special education services at Gatewood Elementary, including an adaptive swing and weighted vest; a helmet; occupational therapy; and speech-language therapy. (*Id.* at ¶ 17.)  P.A. was also provided specialized transportation to Gatewood Elementary on account of his lack of communication.  (*Id.* at ¶ 19.)  During this time, Evans provided P.A.'s occupational therapy.  (*Id.* at ¶ 18.)

Plaintiffs allege that, on September 11, 2018, P.A. left for Gatewood Elementary and did not have any bruises or other injuries when he departed.  (*Id.* at ¶¶ 20–21.)  During the lunch period, Plaintiffs allege that Evans "physically and forcefully slammed P.A. into a cube chair" and further physically abused and restrained him.  (*Id.* at ¶ 22.)  Evans' alleged slamming and restraining of P.A. resulted in "severe physical and emotional damages," including bruising and abrasions on P.A.'s arms and back, edema to P.A.'s lower spine, an "extreme" fear of therapists, and "significant developmental regression."  (*Id.*)  Plaintiffs allege that P.A.'s teacher witnessed this incident and later called H.K. to apologize for Evans' misconduct and stated that the incident "shouldn't have happened."  (*Id.* at ¶ 24.)

Plaintiffs also allege that FCBOE failed to timely and appropriately discipline Evans for the incident.  (*Id.* at ¶ 33.)  Further, Plaintiffs assert that H.K. requested at an Individualized

2

Education Program meeting that cameras or other monitoring equipment be used in classrooms prior to P.A. returning to school and that other parents of students made similar requests, but that FCBOE refused to implement any of the requested changes.  (*Id.* at ¶¶ 34–36.)  Plaintiffs allege that as a result of the misconduct and refusal to implement the requests, P.A. did not return to Gatewood Elementary until December 2018.  (*Id.* at 42.)

Plaintiffs have asserted the following claims against only Defendant Evans:  Count I, violation of the Fourth Amendment under 42 U.S.C. § 1983; Count II, violation of substantive due process under 42 U.S.C. § 1983; Count III, violation of procedural due process under 42 U.S.C. § 1983; and Count XII, common-law battery.  (*See generally id.*)

Plaintiffs have asserted the following claims against only Defendant FCBOE:  Count IV, municipal liability under 42 U.S.C. § 1983; Count V, violation of Section 504 of the Federal Rehabilitation Act, 29 U.S.C. § 794(a); Count VI, violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12132; Count XI, negligent hiring, supervision, and retention.  (*See generally id.*)

Finally, Plaintiffs have asserted the following claims against both Defendants FCBOE and Evans: Count VII, state constitutional tort under Article III, Sections 1, 5, 6 and 10, and Article XII of the West Virginia Constitution; Count VIII, violation of the West Virginia Human Rights Act, W. Va. Code § 5-11-1, *et seq.*; Count IX, intentional infliction of emotional distress; Count X, negligence; and Count XIII, individual damages sustained by Plaintiff H.K.  (*See generally id.*)

On December 11, 2019, Defendants moved this Court to dismiss the Complaint in its entirety.  (ECF No. 11.)  Plaintiffs responded on December 26, 2019.  (ECF No. 15.)  Defendants did not file a reply.  As such, this motion is fully briefed and ripe for adjudication.

## II.   *LEGAL STANDARD*

A pleading must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2); *see McCleary-Evans v. Md. Dep't of Transp., State Highway Admin.*, 780 F.3d 582, 585 (4th Cir. 2015) (stating that this requirement exists "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests") (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). To withstand a motion to dismiss made pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must plead enough facts "to state a claim to relief that is plausible on its face." *Wikimedia Found. v. Nat'l Sec. Agency*, 857 F.3d 193, 208 (4th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Stated another way, the factual allegations in the complaint "must be sufficient 'to raise a right to relief above the speculative level.'" *Woods v. City of Greensboro*, 855 F.3d 639, 647 (4th Cir. 2017) (quoting *Twombly*, 550 U.S. at 555). Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)).

In evaluating the sufficiency of a complaint, this Court first "identif[ies] pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Iqbal*, 556 U.S. at 679. This Court then "assume[s] the[ ] veracity" of the complaint's "well-pleaded factual allegations" and "determine[s] whether they plausibly give rise to an entitlement to relief." *Id.* Review of the complaint is "a context-specific task that requires [this Court] to draw on its judicial

4

experience and common sense." *Id.* "[T]o satisfy the plausibility standard, a plaintiff is not required to plead factual allegations in great detail, but the allegations must contain sufficient factual heft to allow a court, drawing on judicial experience and common sense, to infer more than the mere possibility of that which is alleged." *Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 452 (4th Cir. 2017) (internal quotation marks omitted).

## III.   DISCUSSION

Defendants begin by arguing that because FCBOE and Evans are entitled to qualified immunity on all claims Plaintiffs have asserted, all claims therefore fail as a matter of law and should result in the dismissal of the Complaint in its entirety.  (ECF No. 12 at 4.)  Defendants then argue that Plaintiffs have sued Evans both in her official capacity and her personal capacity, and that such "official capacity" claims are redundant of the claims asserted against FCBOE.  (*Id.* at 7–8.)  Next, Defendants argue that Plaintiffs' claim of intentional infliction of emotional distress against Evans is duplicitous of the claim for battery and should be dismissed.  (*Id.* at 8.)  Then, Defendants assert that the claims of intentional infliction of emotional distress and the claim asserting a violation of the West Virginia Human Rights Act must be dismissed against FCBOE because a political subdivision cannot be held responsible for the intentional conduct of its employees.  (*Id.* at 8–9.)  Next, Defendants argue that the claims alleging violations of the Rehabilitation Act and ADA must be dismissed because the Complaint fails to assert allegations that would show any alleged discrimination was intentional.  (*Id.* at 9–11.)  Further, Defendants argue that FCBOE cannot be held liable for any claim under 42 U.S.C. § 1983 asserted by the Plaintiffs because the Complaint has failed to meet the pleading standards of *Twombly* and *Iqbal*. (*Id.* at 11.)  Then, Defendants assert that Plaintiffs' claim brought pursuant to the West Virginia Human Rights Act fails because it also has failed to meet the pleading standards of *Twombly* and

*Iqbal*. (*Id.* at 12–13.) Finally, Defendants argue that Plaintiffs' claim for punitive damages against the Defendants are barred by the provisions of West Virginia Code § 29-12A-7. (*Id.* at 13.) The Court will first address the issue of qualified immunity before turning to the remaining arguments.

### A. Qualified Immunity

Defendants have moved for the dismissal of "all claims" based on an assertion of qualified immunity afforded to Evans.[2] (*Id.* at 4.) The purpose of qualified immunity is to ensure that government officials performing discretionary functions can perform their duties "free from the specter of endless and debilitating lawsuits." *Torchinsky v. Siwinski*, 942 F.2d 257, 260 (4th Cir. 1991) (citing *Anderson v. Creighton*, 483 U.S. 635, 638 (1987)). When performing discretionary functions, government officials are "entitled to qualified immunity from liability for civil damages to the extent that 'their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Rish v. Johnson*, 131 F.3d 1092, 1095 (4th Cir. 1997) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Thus, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

While a defendant may assert a qualified immunity defense through a Rule 12(b)(6) motion, "the defense faces a formidable hurdle" and "is usually not successful." *Owens v. Baltimore City State's Attorney's Office*, 767 F.3d 379, 396 (4th Cir. 2014) (quoting *Field Day,*

---

[2] Despite moving for the dismissal of "all claims" on the assertion of qualified immunity, Defendants appear to have failed to address how this immunity defense applies to Counts VII (state constitutional tort), Count XI (negligent hiring, supervision, retention), Count XII (battery), and Count XIII (individual damages asserted by H.K.), all state-law claims. Regardless, this Court finds that even if Defendants had addressed these claims, Plaintiffs have alleged sufficient facts to overcome the qualified immunity defense at this stage of the proceedings. Qualified immunity on state law claims largely follows federal law. *See City of Saint Albans v. Botkins*, 228 W. Va. 393, 398, 719 S.E.2d 863, 868 (2011). For the reasons more fully discussed in Section A of this Order, the Court finds that Defendants are not entitled to qualified immunity on Plaintiffs' state law claims. Therefore, Defendants' motion is **DENIED** as to Counts VII, Count XI, Count XII, and Count XII as they relate to the qualified immunity defense.

6

*LLC v. Cnty. of Suffolk*, 463 F.3d 167, 191–92 (2d Cir. 2006)).  This is because, at this very early stage in the proceedings, dismissal under Rule 12(b)(6) is only appropriate if the plaintiff "fails to state a claim that is *plausible* on its face."  *Id.* at 396 (quoting *Iqbal*, 556 U.S. at 678) (emphasis in original).  When a defendant asserts the qualified immunity defense at this stage, the plaintiff's burden is to demonstrate that his § 1983 claim "satisfies the following two-prong test: '(1) the allegations underlying the claim, if true, substantiate a violation of a federal statutory or constitutional right; and (2) this violation was of a clearly established right of which a reasonable person would have known.'"  *Souk v. City of Mount Hope*, Civ. Action No. 2:14-cv-26442, 2015 WL 5698509 at *5 (S.D. W. Va. Sep. 28, 2015) (quoting *Occupy Columbia v. Haley*, 738 F.3d 107, 118 (4th Cir. 2013)).

The Supreme Court once required a district court to first address the threshold question of whether there was a constitutional violation alleged before turning to the second question of whether, if a violation was found, that the violation was of clearly established law.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001).  Under the Supreme Court's more recent decision in *Pearson v. Callahan*, 555 U.S. 223 (2009), however, a district court retains discretion in determining the order in which to address the two prongs of the qualified immunity inquiry.  The present case alleges violations of fundamental and well-established constitutional principles.  Accordingly, this Court recognizes that the analysis established in *Saucier* to be beneficial and thus analyzes first, whether a constitutional violation occurred, and second, whether the right violated was clearly established. *See Souk*, 2015 WL 5698509 at *5.  The first task for this Court, then, is to scrutinize the Complaint and determine whether any constitutional violation has been plausibly alleged.  Because Plaintiffs have alleged several constitutional violations, the Court addresses each in turn, beginning with Plaintiffs' Fourth Amendment claim.

7

*1. Fourth Amendment*

Plaintiffs have invoked the protections of the Fourth Amendment here alleging that Evans, in seizing P.A., "unlawfully subjected P.A. to excessive, unreasonable, and unnecessary physical force, which proximately caused P.A. serious physical and long-term psychological harm." (ECF No. 1 at ¶ 56.)  Therefore, the Court begins its analysis by examining Plaintiffs' claim under the Fourth Amendment.

The Fourth Amendment generally prohibits searches and seizures of citizens absent a warrant supported by probable cause.  *Wofford v. Evans*, 390 F.3d 318. 325 (4th Cir. 2004).  It also prohibits police officers from using excessive force to seize and detain citizens, and "this applies equally to the conduct of resource officers in schools."  *Z.F. v. Adkins*, 2:18CV00042, 2019 WL 1559022 at *3 (citing *E.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018)); *see also DesRoches by DesRoches v. Caprio*, 156 F.3d 571, 574 (4th Cir. 1998) ("Searches and seizures carried out by school officials are governed by the same Fourth Amendment principles that apply in other contexts.").  Whether a school official has used excessive force is examined under a reasonableness standard "in light of the facts and circumstances confronting [him], without regard to [his] underlying intent or motivation."  *Graham*, 490 U.S. at 397.  This is an objective inquiry and requires a court to consider the amount of force used, the student's age, and school context, among other things.  *See Jones v. Buchanan*, 325 F.3d 520, 530–31 (4th Cir. 2003) (noting that the level of force used caused severe injuries was a relevant consideration); *E.W. v. Dolgos*, 884 F.3d 172, 179 (4th Cir. 2018) (noting that it is "prudent to consider [] the suspect's age and the school context").

Here, Plaintiffs have clearly and sufficiently alleged a Fourth Amendment claim of an unreasonable seizure effectuated by excessive force.  Plaintiffs have alleged that Evans "physically

slammed" and restrained P.A., a four-year-old boy with significant developmental disabilities, into a cube chair with such force that it resulted in excessive bruising, edema, a fear of therapists, and significant developmental regression. (ECF No. 1 at ¶ 22.) As alleged, the facts indicate a use of force that was disproportionate to any need presented and further indicate what could be considered severe injuries. As such, Plaintiffs have plead sufficient allegations to support a plausible Fourth Amendment unreasonable seizure and excessive force claim.

Having established that Plaintiffs have sufficiently pled a plausible constitutional violation, this Court next addresses whether the violation was of a clearly established law. *See Meeker*, 415 F.3d at 323. This part of the analysis examines "whether a reasonable [official] could have believed [the challenged conduct] to be lawful, in light of clearly established law," at the time of the incident. *Id.* (quoting *Anderson v. Creighton*, 483 U.SS. 635, 641 (1987). A right is "clearly established" if "the contours of the right [are] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Hill v. Crum*, 727 F.3d 312, 321 (4th Cir. 2013) (quoting *Wilson v. Layne*, 526 U.S. 603, 615, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999)). However, it is unnecessary for the specific action and facts alleged to be held unlawful previously in order to constitute a clearly established right. *H.H. ex rel. H.F. v. Moffett*, 335 Fed.Appx. 306, 314 (4th Cir. 2009). Rather, the clearly established element serves as "a notice-giving provision" that provides government officials with "fair warning" that conduct violates the Constitution. *Souk*, 2015 WL 5698509 at *10. The Fourth Amendment, however, requires a "high level of specificity" because "it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *E.W.*, 884 F.3d at 186. A seizure in the school context may be "permissible in its scope when the measures adopted are reasonably related to the objectives of the [seizure] and not excessive[ ] . . . in light of

9

the age and sex of the student and the nature of the infraction." *New Jersey v. T.L.O.*, 469 U.S. 325, 342 (1985).

Context is therefore critical to the reasonableness analysis. Here, Evans allegedly "physically and forcefully" slammed P.A. into a chair. (ECF No. 1 at ¶ 22.) Further, Evans allegedly physically restrained P.A. such that P.A. sustained extensive bruising "all over his back and arms," as well as abrasions on his arms. (*Id.* at ¶ 56.) P.A. was a four-year-old boy at the time of the alleged incident. (*Id.* at ¶ 11.) Moreover, P.A. was diagnosed with Autism Spectrum Disorder, was nonverbal, and needed assistance with numerous daily activities because of his diagnosis. (*Id.* at ¶ 12.) Evans had personal knowledge of P.A.'s disabilities because she was his occupational therapist at Gatewood Elementary. (*Id.* at ¶ 18.) There has been no allegation of a need for increased force to place P.A. in his cube chair, and Evans possessed superior size and strength. (*Id.* at ¶ 23.) Any reasonable occupational therapist would know that slamming and physically restraining a four-year-old special needs student with such force as to cause extensive bruising and abrasions would violate that student's Fourth Amendment protections against unreasonable seizures. *See, e.g.*, *Conklin v. Jefferson Cty. Bd. of Educ.*, 205 F.Supp.3d 797, 807 (N.D. W. Va. 2016) (finding special education teacher not entitled to qualified immunity from due process claim where teacher used excessive force against disabled student). Therefore, this Court finds that, at this early stage in these proceedings, Plaintiffs have sufficiently alleged a plausible violation of the Fourth Amendment such that Defendants' assertion of qualified immunity is defeated.

Nevertheless, this Court recognizes the need for further factual development in addressing the issue of qualified immunity. *See Souk*, 2015 WL 5698509 at *12. Indeed, on the issue of reasonableness, "qualified immunity is peculiarly well-suited for resolution at the summary

10

judgment stage." *Id.* at *10. While cognizant of the need for early resolution on the issue of qualified immunity, that need should not "alter the substantive standards governing pre-trial motions." *Id.* In this case, Plaintiffs have managed to plead sufficient factual allegations to support their Fourth Amendment claim of excessive force. Defendants' motion is **DENIED** as to Count I of the Complaint.

### 2. *Substantive Due Process*

Having already established that Plaintiffs have defeated the Defendants' assertion of qualified immunity as to the Fourth Amendment claim, the Court now examines Plaintiffs' cause of action asserting a violation of the Fourteenth Amendment's right to substantive due process. (ECF No. 1 at 9.) Defendants argue that Defendant Evans "placed" P.A. in a cube chair and that this placement into the chair was "objectively reasonable given his developmental disabilities." (ECF No. 12 at 7.) As such, Defendants maintain they are entitled to qualified immunity and that the Complaint fails to plead sufficient allegations that Evans' conduct was malicious or objectively unreasonable. (*Id.*)

The Supreme Court has recognized that "corporal punishment in public schools implicates a constitutionally protected liberty interest . . . to be free from . . . unjustified intrusions on personal security." *Ingraham v. Wright*, 430 U.S. 651, 672 (1977). Like the Fourth Amendment analysis above, the proper inquiry into a substantive due process violation focuses on the force imposed by school officials. *Meeker v. Edmundson*, 415 F.3d 317, 321 (4th Cir. 2005). A school official can violate a student's rights to substantive due process if "the force applied caused injury so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of

official power literally shocking to the conscience."  *Hall v. Tawney*, 621 F.2d 607, 613 (4th Cir.1980).

Plaintiffs' Complaint clearly alleges facts sufficient to state a constitutional violation under this analysis.  As this Court has already addressed, Plaintiffs allege that Evans used force disproportionate to any need and "physically and forcefully" slammed and restrained P.A., a four-year-old developmentally disabled boy, into a cube chair. (*See id.* at ¶ 22.)  The Complaint further alleges that this use of force resulted in both physical and emotional injuries, including extensive bruising, edema, and significant developmental regression.  (*Id.*)  Moreover, Plaintiffs have alleged that Evans had personal knowledge of P.A.'s disabilities such that she should have known her conduct could result in injury to P.A.  Finally, Plaintiffs allege that Evans' conduct was so objectively unreasonable that P.A.'s teacher, who had witnessed this event, later called H.K. to state that the event "shouldn't have happened." (*See id.* at ¶ 24.)  Under these allegations, Plaintiffs have clearly alleged a plausible constitutional violation.

Having established that Plaintiffs have sufficiently pled a plausible constitutional violation, this Court next addresses whether the violation was of a clearly established law.  *See Meeker*, 415 F.3d at 323.  This Court has little difficulty in finding that a reasonable occupational therapist would know that physically slamming a child into a chair interferes with the child's constitutional liberty interests.  "The Fourteenth Amendment liberty interest in bodily integrity has been recognized since at least 1977," and the Fourth Circuit has also recognized that the "arbitrary use of corporal punishment" has been prohibited by the Fourteenth Amendment since the *Hall* decision in 1980.  *See Meeker*, 415 F.3d at 323.[3]  Importantly, "even where a teacher may have a

---

[3] The Fourth Circuit also recognized in *Meeker* that even in jurisdictions where corporal punishment is administered pursuant to established disciplinary codes, and thus not actionable as a substantive due process violation, "claims

conceivably permissible justification for use of a restraint, her actions will not be protected by qualified immunity when they amount to an 'abuse of official power literally shocking to the conscience.'" *Moffett*, 335 Fed.Appx. at 314. Here, even if Defendants claim that the justification for such force was to place P.A. in the chair, Evans' alleged use of force was clearly disproportionate to that goal such that it amounts to an abuse of official power literally shocking to the conscience. Plaintiffs have managed to plead sufficient factual allegations to overcome Defendants' qualified immunity defense as to the substantive due process claim. Defendants' motion is **DENIED** as to Count II of the Complaint.

### 3. *Procedural Due Process*

Defendants have moved for the dismissal of "[a]ll claims" asserted on the basis of qualified immunity but have neglected to address Count III in their accompanying memorandum of law. (ECF No. 12 at 4–7.) Plaintiffs urge the Court to deny Defendants' motion as to Count III because P.A. has demonstrated a property interest in education and that the Defendants' actions and inaction deprived P.A. of that property interest. (ECF No. 15 at 7, n.3.)

The Supreme Court has recognized that a protected interest within the Fourteenth Amendment is not created by the Constitution, but rather is created by an independent source of law, such as state statutes. *See Goxx v. Lopez*, 419 U.S. 565, 572–73 (1975). The State of West Virginia has guaranteed special needs students access to a free public education, thus creating a protected interest within the Fourteenth Amendment. *See* W. Va. Const. art. XII, § 1("The

---

alleging arbitrary acts of violence are." 415 F.3d at 324. Other circuits are in agreement. *See, e.g.*, *Neal v. Fulton County Bd. of Educ.*, 229 F.3d 1069, 1073 (11th Cir. 2000); *P.B. v. Koch*, 96 F.3d 1298, 1304 (9th Cir. 1996) (holding that when there is no disciplinary need to use force against a student, "one can reasonably infer" that the violent actions were taken "not in good faith but for the purpose of causing harm"); *Webb v. McCullough*, 828 F.2d 1151, 1159 (6th Cir. 1987) (holding that lack of evidence that the blows were disciplinary raised the possibility that the "need to strike . . . was so minimal or non-existent that the alleged blows were a brutal and inhumane abuse of . . . official power, literally shocking to the conscience").

Legislature shall provide, by general law, for a thorough and efficient system of free schools."); W. Va. Code St. R. § 126-16, ch. 1 ("A free appropriate public education (FAPE) must be available to all students residing in the state between the ages of three and twenty-one, inclusive, who are eligible for special education services.").

Here, Plaintiffs have pled sufficient facts to overcome Defendants' assertion of qualified immunity at this stage. In addition to the allegation that P.A. was forcefully slammed into a chair and restrained there, (*See* ECF No. 1 at ¶ 22), Plaintiffs have alleged that H.K. submitted complaints to the FCBOE and Gatewood Elementary administration regarding the above-described incident and made requests for recording instruments to be installed in the classroom before P.A. could return to the school. (*Id.* at ¶¶ 34–35.) Plaintiffs allege that the FCBOE and the school refused these requests and took no action in disciplining Defendant Evans. (*Id.* at ¶ 33.) As a result of these failures, P.A. was unable to return to school until December 2018. (*Id.* at ¶¶ 40, 42, 80.) Notwithstanding Defendants' lack of argument concerning Count III, Plaintiffs' have sufficiently plead a plausible procedural due process claim. Defendants' motion is **DENIED** as to Count III of the Complaint.

### 4. *Municipal Liability*

Defendants next argue that Plaintiffs have failed to plead sufficient allegations to support a municipal liability claim pursuant to § 1983 against Defendant FCBOE. (ECF No. 12 at 11–12.) Defendants assert that Plaintiffs have only plead a conclusory allegation that the FCBOE had a policy and base that allegation on a single, solitary incident that is insufficient to establish municipal liability. (*Id.* at 12.) Plaintiffs, however, maintain they have met the pleading standards because the sole incident complained of was "plainly obvious" such that the FCBOE should have been on notice of the need to properly train its employees. (ECF No. 15 at 11.)

14

First, a municipality may be liable under § 1983 if the municipality itself subjects an individual to a deprivation of rights or causes an individual to be subjected to such deprivation. *Connick v. Thompson*, 563 U.S. 51, 59 (2011) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 692 (1978)). Under § 1983, municipalities are responsible only for "their own illegal acts." *Pembaur v. Cincinnati*, 475 U.S. 469, 479 (1986) (citing *Monell*, 436 U.S. at 665–83). Municipalities are not vicariously liable for their employees' actions under § 1983. *Monell*, 436 U.S. at 691.

Thus, to establish a § 1983 claim against a municipality, a plaintiff must show that the action that caused their injury was "pursuant to official municipal policy." *Id.* at 691, 694.

> A policy or custom for which a municipality may be held liable can arise in four ways: (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest [s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d 215, 218 (4th Cir. 1999)). Plaintiffs here have asserted a failure-to-train theory to support their § 1983 claim against FCBOE.

In order to establish municipal liability on a claim of failure to train, a plaintiff must show that "the failure to train amounts to deliberate indifference to the rights of those with whom municipal employees will come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference, in the context of a failure to train, can be shown in one of two ways. First, a plaintiff may show a "pattern of similar constitutional violations" by municipal employees. *Connick v. Thompson*, 563 U.S. 51, 61 (2011). Second, a municipality may face liability for a single incident where the need for training concerning an officer's conduct was

"plainly obvious." *Doe v. Broderick*, 225 F.3d 440, 456 (4th Cir. 2000). Plaintiffs have opted to advance their argument under the theory that the need to train employees on the proper restraint of special needs students was "plainly obvious."

Here, Plaintiffs have sufficiently plead a failure-to-train claim against the FCBOE. As discussed, Plaintiffs have alleged that Defendant Evans, an employee of FCBOE, physically slammed and restrained P.A. in a cube chair. (ECF No. 1 at ¶ 22.) This use of force resulted in numerous injuries to P.A., including excessive bruising, edema, and developmental regression. (*Id.*) The need to train employees on the proper handling and restraint of special needs students was plainly obvious, and the risk of not training employees was realized as alleged by the injuries sustained by P.A. in Plaintiffs' Complaint. For these reasons, Plaintiffs have sufficiently plead a municipal liability claim and have overcome the Defendants' claim of qualified immunity at this stage. Defendants' motion is **DENIED** as to Count IV of the Complaint.

### B. Official Capacity

Defendants next move for the dismissal of all claims asserted against Defendant Evans in her official capacity, asserting the claims are redundant of the claims against the FCBOE. (ECF No. 12 at 7–8.) Plaintiffs have responded in kind by voluntarily dismissing, without prejudice, their claims against Defendant Evans in her official capacity. (ECF No. 15 at 3, n.1.)

Therefore, Defendants' motion is **GRANTED** regarding all claims against Defendant Evans in her official capacity. All claims asserted against Defendant Evans in her official capacity are hereby **DISMISSED** without prejudice.

### C. Intentional Infliction of Emotional Distress

Defendants next move this Court to dismiss Plaintiffs' intentional infliction of emotional distress ("IIED") because it is duplicitous of Plaintiffs' claim of battery. (ECF No. 12 at 8.).

16

Plaintiffs have responded by offering to voluntarily withdraw its IIED claim, without prejudice. (ECF No. 15 at 3, n.1.)

Therefore, Defendants' motion is **GRANTED** regarding Plaintiffs' claim of intentional infliction of emotional distress.  Plaintiffs' claim of intentional infliction of emotional distress is hereby **DISMISSED** without prejudice.

D. *Immunity under the West Virginia Governmental Tort Claims and Insurance Reform Act*

Next, Defendants argue for the dismissal of Count VIII as asserted against FCBOE. Defendants argue that Count VIII, which asserts a violation of the West Virginia Human Rights Act ("WVHRA"), is subject to dismissal because political subdivisions "cannot be held vicariously liable for the intentional acts of its employees."[4]  ECF (No. 12 at 8–9.)

Defendants' argument is based on language within the West Virginia Governmental Tort Claims and Insurance Reform Act (the "GTCA").   *See* W. Va. Code § 29-12A-4(b)–(c). Subsection (b) establishes that a "political subdivision" shall not be liable in damages in a civil action for injury "caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function[.]"  Relatedly, subsection (c) establishes that a political subdivision may be liable for injury only in one of the following five instances: (1) when the injury is caused by the negligent operation of any vehicle by its employees when engaged within the scope of their employment and authority; (2) when the injury is the result of negligence by an employee acting within the scope of employment; (3) when the injury is caused by the negligent failure of the political subdivision to keep public roads, streets, sidewalks, and other related pathways and grounds open and in good repair; (4) when the injury is

---

[4] Defendants also argue that Plaintiffs' IIED claim against the FCBOE is subject to dismissal for this same reason.  As the IIED claim has already been voluntarily withdrawn by Plaintiffs, the Court does not address this argument here.

caused by the negligence of its employees and it occurs on or within the grounds of the buildings used by the political subdivision; and (5) when liability is expressly imposed upon the political subdivision by another provision of the West Virginia Code.  W. Va. Code § 29-12A-4(c)(1)–(5).

Plaintiffs argue that FCBOE cannot be immune from liability in this action because the WVHRA expressly imposes liability upon FCBOE and that the immunity afforded by the GTCA does not apply.  (*Id.*)  This Court agrees.  By the plain language of § 29-12A-4(c)(5), liability may be imposed upon a political subdivision if expressly provided for by another provision of the West Virginia Code.  Therefore, the Court must determine whether the WVHRA expressly imposes liability upon FCBOE.

The WVHRA makes it unlawful

(6) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to:

(A) Refuse, withhold from or deny to any individual because of his or her race, religion, color, national origin, ancestry, sex, age, blindness or disability, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations;

W. Va. Code § 5-11-9.  A "person" is defined by the WVHRA as "one or more individuals, partnerships, associations, organizations, corporations, labor organizations, cooperatives, legal representatives, trustees, trustees in bankruptcy, receivers and other organized groups of persons[.]"  W. Va. Code § 5-11-3(a).  A county board of education is a "person" under this definition.  *See* Syl. Pt. 2, *Board of Educ. of Lewis Cnty. v. West Virginia Human Rights Comm'n*, 182 W. Va. 41, 42, 385 S.E.2d 637, 638 (1989).

The WVHRA expressly imposes liability on the FCBOE.  Defendants' motion is **DENIED** as it relates to Plaintiffs' claim of a violation of the WVHRA against Defendant FCBOE.

E. *The Rehabilitation Act, the Americans with Disabilities Act, and the West Virginia Human Rights Act*

Next, Defendants argue for the dismissal of claims asserting violations of Section 504 of the Rehabilitation Act (Count V), the Americans with Disabilities Act (Count VI), and the WVHRA (Count VIII) because Plaintiffs have failed to allege sufficient facts that would show intentional discrimination. (ECF No. 12 at 9–11.) Defendants maintain that Plaintiffs have only made "conclusory allegations" that FCBOE's actions were intentionally discriminatory and are not sufficient under the pleading standards set forth in *Twombly* and *Iqbal*. This Court will address the Rehabilitation Act and the ADA together, before addressing the WVHRA.

1. *Section 504 of the Rehabilitation Act and the Americans with Disabilities Act*

The Fourth Circuit has determined that, because § 504 of the Rehabilitation Act and Title II of the ADA both prohibit discrimination against an otherwise qualified person with a disability, the same analysis should be applied to both. *See Doe v. University of Md. Medical Sys. Corp.*, 50 F.3d 1261, 1264 n.9 (4th Cir. 1995) ("Because the language of the two statutes is substantially the same, we apply the same analysis to both."). With this in mind, the Court will analyze the Defendants' motion to dismiss under this standard.

The Fourth Circuit has determined that three elements are necessary to establish a violation of either § 504 or Title II of the ADA.

> In order to establish a violation of either of these statutes, a plaintiff must prove: (1) that he has a disability; (2) that he is otherwise qualified for the employment or benefit in question; and (3) that he was excluded from the employment or benefit due to discrimination solely on the basis of the disability.

*Id.* at 1264–65. Defendants' argument focuses solely on the third element, specifically that Plaintiffs' have failed to allege sufficient facts that the discrimination was solely on the basis of the disability. (ECF No. 12 at 11.) This Court disagrees.

At this stage, Plaintiffs merely need to plead sufficient allegations such that a claim is plausible on its face.  A claim has facial plausibility when the plaintiff pleads sufficient facts to allow the Court to make a reasonable inference that a defendant is liable for the misconduct alleged.  Here, Plaintiffs have not made solely conclusory allegations that the misconduct was intentionally discriminatory, as the Defendants argue.  Rather, Plaintiffs allege that Defendants knew of P.A.'s disabilities, considering his enrollment in and receiving of special needs services, (ECF No. 1 at ¶¶ 17–18); that Defendants were aware of the alleged incident, (*Id.* at ¶¶ 33, 37); and that the FCBOE failed to take any disciplinary or corrective action in response to the incident. (*Id.* at ¶¶ 33–40.)  Perhaps most importantly to this Court's analysis, however, is the allegation that no non-disabled students were subjected to the same alleged misconduct or denied access to educational services.  (*Id.* at ¶¶ 105, 114, 130.)  This allegation in particular is sufficient to allow the Court to draw the reasonable inference that the Defendants' alleged misconduct was the result of intentional or purposeful discrimination.

Therefore, for the above reasons, Defendants' motion to dismiss Counts V and VI of the Complaint is **DENIED**.

### 2.   *The West Virginia Human Rights Act*

Similarly, Defendants assert that Plaintiffs have failed to sufficiently plead that the alleged conduct of the Defendants was a result of any discrimination based on P.A.'s disability.  (ECF No. 12 at 13.)  Rather, they argue that Plaintiffs have only stated in a "conclusory fashion" that the conduct was "due to [P.A.'s] disability."  (*Id.* at 13.)

As previously stated, the WVHRA makes it unlawful

(6) For any person being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place of public accommodations to:

20

> (A) Refuse, withhold from or deny to any individual *because of his . . . disability*, either directly or indirectly, any of the accommodations, advantages, facilities, privileges or services of the place of public accommodations;

W. Va. Code § 5-11-9 (emphasis added). "Therefore, a cause of action under the WVHRA must be predicated upon an unlawful motivation, not simply an unlawful injury." *Arbaugh v. Bd. of Educ., Cnty. of Pendleton*, 329 F.Supp.2d 762, 772 (N.D. W. Va. 2004).

As described above, Plaintiffs have sufficiently alleged facts that establish a facially plausible claim of a violation of the WVHRA. Again, critical to that determination is the allegation that no non-disabled students were either abused or denied access to services as a result of that abuse. (ECF No. 1 at ¶¶ 105, 114, 130.)

Therefore, for the foregoing reasons, Defendants' motion to dismiss Count VIII of the Complaint is **DENIED**.

### F. Punitive Damages

Finally, Defendants argue that the GTCA, specifically West Virginia Code § 29-12A-7, prohibits the award of punitive damages against a political subdivision and its employees. (ECF No. 12 at 13.) Section 29-12A-7 states as follows:

> Notwithstanding any other provisions of this code or rules of a court to the contrary, in an action against a political subdivision or its employee to recover damages for injury, death, or loss to persons or property for injury, death, or loss to persons or property caused by an act or omission of such political subdivision or employee:

> (a) In any civil action involving a political subdivision or any of its employees as a party defendant, an award of punitive or exemplary damages against such political subdivision is prohibited.

Plaintiffs counter that Defendant Evans is not covered by the statute and therefore is subject to punitive damages, and also assert that the GTCA's prohibition of punitive damages does not apply to federal claims pursuant to W. Va. Code § 29-12A-18(e). Section 29-12A-18(e) states that the

prohibition of punitive damages against political subdivisions does not apply to "[c]ivil claims based upon alleged violations of the constitution or statutes of the United States except that the provisions of section eleven of this article shall apply to such claims or related civil actions."[5]

The Court will first address Defendant Evans and finds that the prohibition on punitive damages does not extend to the employee of a political subdivision.  Under the plain language of the GTCA, it does not prohibit or otherwise limit punitive damages against employees of political subdivisions.  *Id.* ("In any civil action involving a political subdivision or any of its employees as a party defendant, an award of punitive or exemplary damages *against such political subdivision* is prohibited." (emphasis added).  *See also Webb v. Raleigh Cnty. Sheriff's Dept.*, 761 F.Supp.2d 378, 395–96 (S.D. W. Va. 2010) ("However, under a plain reading of the statute, its terms do not limit punitive damages against the employees of a subdivision.")

Similarly, because Plaintiffs have plead a plausible § 1983 claim against Defendant FCBOE, the Court finds that the prohibition on punitive damages does not apply to FCBOE at this stage.  Again, the plain language of section 18 is clear: Article 12A does not apply to civil claims "based upon alleged violations of the constitution or statutes of the United States[.]"   Here, Plaintiffs have plausibly alleged a violation under the United States Constitution and have filed that claim pursuant to 42 U.S.C. § 1983.  *See, e.g.*, *Cummings v. City of Wheeling, West Virginia*, Civ. Action No. 5:19-cv-271, 2019 WL 6609693 at *3 (N.D. W. Va. Dec. 5, 2019).

Therefore, based on the foregoing reasons, Defendants' motion to dismiss on the issue of punitive damages is **DENIED**.

---

[5] Generally, West Virginia Code § 29-12A-11 provides that a political subdivision shall defend its employees in civil actions where the alleged injury was caused by an act or omission of the employee within the scope of his employment.

*IV*.    *CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss, (ECF No. 11), is **GRANTED** in part and **DENIED** in part.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        August 14, 2020


_____
THOMAS E. JOHNSTON, CHIEF JUDGE